No. 22-2005 (L), No. 22-2007

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Aaron Goines, et al.,

*Plaintiffs-Appellees*,

v.

TitleMax of Virginia, Inc., et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Middle District of North Carolina
No. 1:19-cv-00489-LCB-JLW

Adrian Nicholson, et al.,

*Plaintiffs-Appellees*,

v.

TitleMax of Virginia, Inc., et al.,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Middle District of North Carolina
No. 1:19-cv-00490-LCB-JLW

## BRIEF OF APPELLANTS

Anthony J. Durone
Lauren Tallent
BERKOWITZ OLIVER
2600 Grand Blvd Suite 1200
Kansas City, MO 64108
(816) 561-7007

*Counsel for Appellants*
*TitleMax of Virginia, Inc., and TitleMax*
*of South Carolina, Inc.*

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, this Certificate of Interested Parties and Corporate Disclosure Statement is submitted on behalf of Appellants TitleMax of Virginia, Inc., and TitleMax of South Carolina, Inc., (collectively "TitleMax").

1. TitleMax is not a parent, subsidiary, or other affiliate of a publicly owned corporation.

2. There are no publicly held companies that own 10% or more of TitleMax's stock.

3. Other than set forth herein, there is no publicly held corporation, not a party to this case, that has a financial interest in the outcome of this case.

4. TitleMax is not a trade association.

5. This matter does not arise out of bankruptcy proceedings.

6. This is not a criminal case in which there was an organizational victim.

**<u>TABLE OF CONTENTS</u>**

**Page**

<u>INTRODUCTION</u> ................................................................ 1

<u>JURISDICTIONAL STATEMENT</u> ...................................... 2

<u>STATEMENT OF ISSUES</u> ................................................. 4

<u>STATEMENT OF THE CASE</u> ........................................... 4

    I.    THE TITLEMAX COMPANIES WERE LICENSED AND REGULATED LENDERS LAWFULLY OPERATING IN SOUTH CAROLINA AND VIRGINIA. ............................. 4

    II.    PLAINTIFFS OBTAINED LOANS FROM TITLEMAX IN VIRGINIA AND SOUTH CAROLINA. ......................... 5

    III.   PLAINTIFFS FILED SUIT AGAINST TITLEMAX BASED ON NORTH CAROLINA'S LENDING LAWS. ................ 6

    IV.   THE ARBITRATOR ISSUED AN AWARD IN FAVOR OF PLAINTIFFS ON THEIR NORTH CAROLINA LAW CLAIMS THAT WAS CONFIRMED BY THE DISTRICT COURT. ................................................................ 7

<u>SUMMARY OF THE ARGUMENT</u> ................................... 11

<u>STANDARD OF REVIEW</u> ................................................ 12

<u>ARGUMENT</u> ................................................................ 13

    I.    THE ARBITRATOR MANIFESTLY DISREGARDED GOVERNING PRINCIPLES OF NORTH CAROLINA LAW IN ASSESSING AND TREBLING A STATUTORY PENALTY TO AWARD WINDFALL DAMAGES TO PLAINTIFFS. .................................................... 13

        A.    North Carolina expressly rejects the double recovery authorized by the Final Award. ............................. 15

        B.    The penalties in the CFA and UDTPA serve the same purpose and cannot be recovered together. ............ 16

        C.    The arbitrator disregarded the law and multiplied the UDTPA's treble penalty to the CFA penalty to improperly create a double recovery. ..................... 20

II.   THE ARBITRATOR EXCEEDED HIS POWERS UNDER
      THE TERMS OF THE ARBITRATION AGREEMENTS BY
      REFUSING TO PROVIDE A WRITTEN EXPLANATION
      FOR THE FLAWED DAMAGES AWARDS. ................................. 23

CONCLUSION ........................................................................................ 27

CERTIFICATE OF COMPLIANCE ...................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 314 S.E.2d 582, disc. rev. denied, 311 N.C. 751 S.E.2d 126 (1984).........................................................17

*Brooks v. Chrysler Fin. Co. LLC*, No. 5:05CV36-H, 2005 WL 2122651 (W.D.N.C. Aug. 31, 2005) ........................................................................................... 16, 20

*Compton v. Kirby*, 157 N.C.App. 1, 21, 577 S.E.2d 905 (2003) .............................16

*Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 362 S.E.2d 578 (1987) ..........19

*Jones v. Dancel*, 792 F.3d 395 (4th Cir. 2015) ........................................................14

*Mapp v. Toyota World, Inc*., 81 N.C.App. 421, 344 S.E.2d 297, disc. review denied, 318 N.C. 283 S.E.2d 464 (1986)..............................................................16

*Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981) ......................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).................................................................................................14

*Nintendo of Am., Inc. v. Aeropower Co*., 34 F.3d 246 (4th Cir. 1994).....................19

*Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230 (4th Cir. 2006) .......................12

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*., 991 F.2d 141 (4th Cir. 1993) .......................................................................................................................18

*Phillips v. Chesson*, 231 N.C. 566, 58 S.E.2d 343 (1950).......................................17

*Raymond James Fin. Servs. v. Cary*, 709 F.3d 382 (4th Cir. 2013) ........................24

*Richardson v. Bank of Am., N.A*., 182 N.C. App. 531, 643 S.E.2d 410 (2007) 16, 21

*Shavitz v. City of High Point*, 177 N.C. App. 465 (2006) ........................................17

*Smith v. Oil Corp*., 239 N.C. 360, 79 S.E.2d 880 (1954) ................................. 15, 16

*Sonic Automotive, Inc. v. Price*, No. 3:10-CV-382, 2011 U.S. Dist. LEXIS 90359 (W.D.N.C. Aug. 12, 2011).....................................................................................24

*State ex rel Cooper v. NCCS Loans, Inc.,* 174 N.C. App. 630, 624 S.E. 2d 371 (2005) ......................................................................................................................21

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ......... 13, 24, 26

*Taylor v. Volvo N. Am. Corp.*, 339 N.C. 238, 451 S.E.2d 618 (1994) ....................21

*United Laboratories, Inc. v. Kuykendall,* 335 N.C. 183, 437 S.E.2d 374 (1993) ...15

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) ...............................................................................................................24

*Wachovia Sec., LLC v. Brand*, 671 F.3d 472 (4th Cir. 2012).................... 13, 14, 20

*Western Employers Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258 (9th Cir. 1992) .................................................................................................................................26

Statutes

28 U.S.C. § 1332(a) ....................................................................................................3

28 U.S.C. § 1332(d) ................................................................3

9 U.S.C. § 10(a)(3) ...............................................................24

9 U.S.C. § 4 ...........................................................................7

9 U.S.C. § 9 .........................................................................10

9 U.S.C. §10(a)(4) ................................................. 12, 24, 26

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ...........................6

N.C. Gen. Stat. § 24-1.1 .......................................................7

N.C. Gen. Stat. § 53-165 ......................................................7

N.C. Gen. Stat. § 75-1.1 ....................................................2, 7

N.C. Gen. Stat. § 75-16 ......................................................19

N.C. Gen. Stat. §53-166(d) ........................................ passim

N.C. Gen. Stat. §53-190 ......................................................2

N.C. Gen. Stat. §53-190(a) ..................................................1

Rules

Federal Rule of Appellate Procedure 26.1 .............................i

Local Rule 26.1 ......................................................................i

## **INTRODUCTION**

Both South Carolina and Virginia recognize the important role title secured loans play in providing a credit source to many Americans who cannot obtain financing through mainstream financial institutions. As a result, and in full compliance with South Carolina and Virginia law, TitleMax[1] established lending operations that offered loans secured by a vehicle title to anyone, regardless of their credit history. Although TitleMax never solicited business from any North Carolina resident, it also never refused to do business with any such resident if and when they chose to travel to one of TitleMax's locations in South Carolina or Virginia in search of needed financial assistance.

North Carolina, on the other hand, has adopted restrictions on lending that effectively deprive consumers with challenged credit histories the opportunity to obtain financing. In fact, North Carolina attempts to limit its residents' opportunities to obtain loans even if they travel to another state. In its "Loans Made Elsewhere Act", North Carolina makes void and unenforceable any loan that violates the constraints on consideration or charges outlined by the statute unless "all contractual activities, including solicitation … [to] delivery and receipt of funds" occurred "entirely outside of North Carolina." N.C. Gen. Stat. §53-190(a).

---

[1] Unless otherwise noted, Defendants-Appellants are referred to collectively as "TitleMax."  Plaintiffs-Appellees are referred to collectively as "Plaintiffs."

Plaintiffs in the underlying cases are North Carolina residents who voluntarily traveled to Virginia or South Carolina to obtain loan products from TitleMax that were unavailable to them in North Carolina.  Although all contract formation activities took place outside of North Carolina, the Arbitrator found TitleMax violated North Carolina's "Loans Made Elsewhere" Act (N.C. Gen. Stat. §53-190) and North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") (N.C. Gen. Stat. § 75-1.1 *et seq.*) because post-contractual loan payments or collateral securitization efforts occurred in North Carolina. Although the Arbitrator did not explain his reasoning in reaching the monetary award, he clearly ignored North Carolina's election of remedies requirement and used the treble penalty of the UDTPA to multiply the statutory penalty set forth in N.C. Gen. Stat. §53-166(d) of the Consumer Finance Act ("CFA") to arrive at a duplicative recovery not permitted by North Carolina law.  For the reasons set forth herein, the decision of the District Court and Arbitrator must be vacated or at least modified to prevent such an improper enforcement or penalty.

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees are North Carolina residents who, along with several hundred others, initiated mass actions in North Carolina state court against Defendants-Appellants, neither of whom have any offices or presence in North Carolina.  Defendants-Appellants timely removed the matters captioned *Aaron*

*Goines, et al. v. TitleMax of Virginia, Inc., et al.* and *Adrian Nicholson, et al. v. TitleMax of Virginia, Inc., et al*. JA0210, JA1150. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1332(d).

On August 17, 2022, the district court entered judgment in favor of Plaintiffs-Appellees Kathy Bratton Harbison, Lindsay Currie, Sandra Darrisaw, Tamara Davis, Lauren Grimsley, Charlene Harris, Linda Hedrick, Antoinette Jackson, Michael Kevin Jones, Jermale Keys, Jamorris Singleton, and Willie Warren. JA0961 (*Goines* judgment). On August 19, 2022, the district court entered judgment in favor of Plaintiffs-Appellees Joshua Johnson and Euell Stanfield. JA1896 (*Nicholson* judgment).

On September 14, 2022 Defendants-Appellants subsequently filed a Motion to Correct and Certify as Final the Judgment Entered on August 17, 2022. JA1012. On September 16, 2022, Defendants-Appellants appealed the judgments, both of which had fully resolved all claims between Plaintiffs-Appellees and Defendants-Appellants. JA1027, JA1971. The Fourth Circuit granted Defendants' "motion to suspend briefing pending resolution of the motions to correct and certify as final the judgments of the district court." JA1996. On December 21, 2022, the district court entered a corrected version of its August 17 Orders, as well as a separate order addressing Plaintiffs' attorney's fees. JA1036. This corrected version replaced and superseded the original August 17, 2022, Order and a corrected version of the Final

3

Judgment was entered and filed contemporaneously. JA1049. The district court additionally certified the judgment related to Arbitrator Needle's Award as final pursuant to Federal Rule of Civil Procedure 54(b). JA1049.

## STATEMENT OF ISSUES

1.      Whether the Arbitrator manifestly disregarded governing principles of North Carolina law that prevents double recovery for the same conduct when it awarded Plaintiffs a statutory penalty and then trebled that statutory penalty to calculate the total amounts awarded to Plaintiffs.

2.      Whether the Arbitrator exceeded his powers under the terms of the parties' arbitration agreements by refusing to provide a written explanation for the flawed amounts awarded to each Plaintiff.

## STATEMENT OF THE CASE

### I.    The TitleMax companies were licensed and regulated lenders lawfully operating in South Carolina and Virginia.

The TitleMax companies were licensed, regulated, and lawfully operating in South Carolina and Virginia. In South Carolina, TitleMax is a Supervised Lender authorized to make supervised loan agreements. JA0385. TitleMax seeks and obtains the approval of the interest rates it charges in its agreements to maintain its licensure status with the South Carolina Department of Consumer Affairs, and is regulated and audited by the South Carolina State Board of Financial Institutions, Consumer Finance Division. JA0385. In Virginia, TitleMax was a motor vehicle

title lender licensed, regulated, and audited by the Virginia State Corporation Commission, Bureau of Financial Institutions, to provide motor vehicle title loans secured by a borrower's automobile. JA0388. This Virginia agency supervised TitleMax by conducting regular examinations of its loan agreements and practices, including the interest rates charged to customers of its Virginia stores, and ensured TitleMax operated in accordance with the law. JA0388.

Conversely, TitleMax did not (and do not) have any brick and mortar stores or physical presence in North Carolina. JA0385, JA0388. TitleMax does not advertise or solicit North Carolinians through radio, television, billboard, mailed advertisements, telephonic solicitation, or any other means for its loan products. JA0385, JA0388. However, North Carolinians may contact TitleMax stores located in states outside of North Carolina and can leave the state of North Carolina and travel to TitleMax stores outside of North Carolina to avail themselves of TitleMax's services. JA0385.

## II.    Plaintiffs obtained loans from TitleMax in Virginia and South Carolina.

Plaintiffs are North Carolina residents who voluntarily traveled to Virginia and South Carolina to obtain loan products from TitleMax unavailable to them in North Carolina. From 2015 through 2019, Plaintiffs applied for and entered into one or more loan agreements with TitleMax (the "Loan Agreements"), and, on each occasion, the loan process was conducted from start to finish while each Plaintiff

5

was physically present at a Virginia or South Carolina store. *See* JA0390-585 (Plaintiffs' loan files).

The entire loan application and approval process, from start to finish, occurred in a South Carolina or Virginia TitleMax store, where: 1) TitleMax physically inspected the prospective borrower's vehicle; 2) the prospective borrower completed and submitted his or her credit application for approval; 3) TitleMax and the borrower agreed upon loan terms and executed a loan agreement; and 4) TitleMax provided to borrower the agreed upon loan proceeds. JA0385, JA0388.

In every case, Plaintiffs agreed to choice-of-law provisions mandating application of Virginia or South Carolina law. *E.g.*, JA0539, JA0580. To the extent Plaintiffs had any disputes regarding the terms and conditions of their loans, the Loan Agreements required them to resolve those disputes through arbitration—proceedings that were to be "governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA')." *E.g.*, JA0523. The Loan Agreements also contained bargained-for contractual terms governing how arbitration would be conducted, including the requirement that "[a]t the timely request of any party, the arbitrator *shall* provide a written explanation for the award." *E.g.*, JA0524 (emphasis added).

## III. Plaintiffs filed suit against TitleMax based on North Carolina's lending laws.

On April 4 and May 3, 2019, Plaintiffs, along with several hundred other individuals, filed suit against TitleMax in North Carolina state court alleging that the

interest rates in their Virginia and South Carolina loans agreements violated North Carolina's lending laws, in matters respectively captioned *Aaron Goines, et al. v. TitleMax of Virginia, Inc., et al.* and *Adrian Nicholson, et al. v. TitleMax of Virginia, Inc., et al*. JA0230, JA1171. Specifically, Plaintiffs alleged the following claims: (i) a violation of the North Carolina Consumer Finance Act ("CFA") (N.C. Gen. Stat. § 53-165 *et seq.*); (ii) in the alternative, a claim for damages under the North Carolina usury statutes (N.C. Gen. Stat. § 24-1.1 *et seq.*); and (iii) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") (N.C. Gen. Stat. § 75-1.1 *et seq.*). JA0236-237, JA1175-1177.

On May 10, 2019, TitleMax removed the matters and denied Plaintiffs' allegations and claims. JA0210, JA0217, JA1150, JA1157.

### IV. The Arbitrator issued an award in favor of Plaintiffs on their North Carolina law claims that was confirmed by the district court.

On April 22, 2020, the district court ordered the parties to arbitration pursuant to 9 U.S.C. § 4 and stayed the matters pending resolution of the arbitrations in accordance with the parties' loan agreements. JA0260, JA1196.

Arbitrator William H. Needle was subsequently appointed to decide the claims of Plaintiffs Kathy Bratton Harbison, Lindsay Currie, Sandra Darrisaw, Tamara Davis, Lauren Grimsley, Charlene Harris, Linda Hedrick, Antoinette Jackson, Michael Kevin Jones, Jermale Keys, Jamorris Singleton, and Willie Warren (claims pending in *Goines*), and Plaintiffs Joshua Johnson and Euell Stanfield

7

(claims pending in *Nicholson*). *See, e.g.*, JA0272. Plaintiffs' North Carolina law claims were then decided on the parties' cross motions for summary disposition.

In its motion, TitleMax explained how North Carolina law cannot be applied to the terms of the Loan Agreements, which were willingly executed in Virginia and South Carolina, for at least three independent reasons. JA0324-361; *see also* JA0621-641 (TitleMax's opposition brief). *First*, the Loan Agreements contain a choice-of-law provision mandating application of Virginia or South Carolina law. And, even in the absence of such a provision, *lex loci contractus* principles mandate application of Virginia or South Carolina law. JA0338-344. *Second*, the North Carolina statutes Plaintiffs relied upon are inapplicable—by their plain language—because all the relevant contract formation activities occurred between Plaintiffs and TitleMax in Virginia or South Carolina. JA0344-350. *Third*, Plaintiffs' interpretation of North Carolina law, if adopted, would violate the U.S. Constitution's Commerce Clause by promoting the public policy of one state (North Carolina) over that of another (Virginia or South Carolina). JA0350-359.

The Arbitrator rejected each of TitleMax's defenses and, on November 2, 2021, entered an Interim Award in favor of Plaintiffs on their North Carolina law claims, specifically, finding that the interest rates in the Loan Agreements violated the CFA, resulting in a violation of the UDTPA. *See* JA0281-294. The Arbitrator acknowledged that the "remedy for a violation of 'Loans Made Elsewhere' Act …

8

states that loans that violate the Act 'shall be void and the licensee or any other party in violation shall have no right to collect, receive, or retain any principal whatsoever with respect to such loan.'" *See* JA0292-293. Although the Interim Award recognized the "Loans Made Elsewhere" Act penalty provision, the Arbitrator did not assess or award damages to Plaintiffs. *See* JA0294 ("Except for Claimants' request for damages, all claims submitted in this Arbitration are determined to be resolved.") The Arbitrator acknowledged that TitleMax had requested (and should receive) a hearing or the opportunity for additional briefing related to the issues of damages if he ruled in Plaintiffs' favor. *See* JA0293-29485. Consistent with this request, the parties submitted additional briefing that focused solely on the computation of the award to each Plaintiff. *See* JA0676-685 (TitleMax's submission).

TitleMax then provided binding, settled authority demonstrating that each Plaintiff must elect a remedy under either the CFA or UDTPA. Plaintiffs could elect: (a) the CFA penalty (i.e., recovery of all amounts paid on the loan); or (b) UDTPA treble damages (i.e., total payments made less loan proceeds received). Plaintiffs could not, however, receive both because North Carolina requires an election to prevent recovering two penalties arising out of the same conduct. JA0677- 681.

9

Nevertheless, the Arbitrator ignored this clear prohibition and entered a Final Award on December 15, 2021, allowing each Plaintiff to recover the CFA penalty, which he trebled. *See* JA0272-280. The Arbitrator awarded (in **bold**):

| AWARDS – NON-REPOSSESSION CLAIMS | | |
|---|---|---|
| **Claimant's Name** | **Interest Paid** | **Trebled** |
| Lindsay Currie | $3,740.01 | **$11,220.03** |
| Tamara Davis | $3,824.31 | **$11,472.93** |
| Charlene Harris | $6,310.04 | **$18,930.12** |
| Lauren Grimsley | $16,618.30 | **$49,854.49** |
| Antoinette Jackson | $5,437.57 | **$16,312.71** |
| Michael Jones | $6,349.86 | **$19,049.58** |
| Jermale Keys | $5,730.55 | **$17,191.65** |
| Euell Stanfield | $7,860.37 | **$23,581.11** |

| AWARDS – REPOSSESSION CLAIMS | | | | |
|---|---|---|---|---|
| **Claimant's Name** | **Interest Paid** | **Spears' Vehicle Value** | **Base Total** | **Trebled** |
| Kathy Bratton | $5,760.55 | $5,700.00 | $11,460.55 | **$34,381.65** |
| Sandra Darrisaw | $4,154.48 | $6,500.00 | $10,654.48 | **$31,963.44** |
| Linda Hedrick | $606.00 | $3,250.00 | $3,856.00 | **$11,568.00** |
| Joshua Johnson | $6,870.80 | $9,700.00 | $16,570.80 | **$49,712.40** |
| Jamorris Singleton | $3,314.90 | $5,000.00 | $8,314.90 | **$24,944.70** |
| Willie Warren | $0.00 | $15,000.00 | $15,000.00 | **$45,000.00** |

Shortly thereafter, Plaintiffs moved to confirm the Final Award under 9 U.S.C. § 9. JA0261-270, JA1196. Pursuant to 9 U.S.C. § 10(a)(4) and governing case law, TitleMax opposed the motions and asked the district court to vacate the Final Award because (i) the Arbitrator's calculation of monetary relief demonstrated a manifest disregard for well-settled North Carolina law and provided windfall double recovery of penalties to Plaintiffs, and (ii) the Arbitrator failed to execute his

powers under the express terms of the parties' arbitration agreements and provide a written explanation for the flawed amounts awarded to each Plaintiff.  JA0298-315, JA1234-1250.

On August 17 and 19, 2022, the district court granted Plaintiffs' motions to confirm the Final Award, denied TitleMax's requests for vacatur, and, as a result, entered judgments in favor of Plaintiffs.  JA0949-963 (*Goines* order and judgment); JA01884-1897 (*Nicholson* order and judgment).[2]  On September 16, 2022, TitleMax timely appealed.  JA1027, JA1971.

**SUMMARY OF THE ARGUMENT**

North Carolina law expressly prohibits double recovery. North Carolina does this by requiring a litigant to elect a remedy. The Arbitrator ignored this requirement and then compounded the error by improperly combining two unique statutory recoveries. In manifest disregard of the law, the Arbitrator improperly permitted a recovery under two statutory schemes by using a penalty provision of the UDTPA (treble damages) to treble the statutory penalty awarded under the CFA.

The FAA requires courts to enforce privately negotiated agreements to

---

[2] On December 21, 2022, the district court entered a corrected version of its August 17 Orders, as well as a separate order addressing Plaintiffs' attorney's fees. JA1036-1051. This corrected version replaced and superseded the original August 17, 2022, Order and a corrected version of the Final Judgment was entered and filed contemporaneously. JA01990-1995.

11

arbitrate, like other contracts, in accordance with their terms. An arbitrator does not have the authority to make decisions about which contractual provisions to apply and which contractual provisions to ignore. The contracts required a written explanation to accompany any award rendered. The Arbitrator ignored the requirement to provide a written explanation and did not execute the arbitration under the terms agreed to by the parties in violation of 9 U.S.C. §10(a)(4).

## STANDARD OF REVIEW

"In reviewing a denial of a motion to vacate an arbitration award," this Court reviews "the district court's determinations of law de novo." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006).

A "federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the Federal Arbitration Act or upon a showing of certain limited common law grounds[,]" including where "the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234 (internal citations omitted). "And although the authority of an arbitrator is broad, and subject to great deference under the applicable standard of review, 'it is not unlimited.'" *Id.* at 235 (citation omitted).

Under the FAA, an award may be vacated if the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Because "an arbitrator derives his . . . powers from the parties' agreement[,]" he exceeds those

12

powers when he "'strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice'" by applying some contractual terms but not others. *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 682 (2010) (citation omitted). Finally, an award may be vacated if it demonstrates a "manifest disregard" of the law. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012). To vacate an award for manifest disregard of the law, the movant must demonstrate that: "'(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle.'" *Id.* at 483 (citation omitted).

## **ARGUMENT**

**I.    The Arbitrator manifestly disregarded governing principles of North Carolina law in assessing and trebling a statutory penalty to award windfall damages to Plaintiffs.**

After identifying the statutory penalty associated with a loan in violation of N.C. Gen. Stat. §53-166(d), the Arbitrator disregarded settled North Carolina law to improperly combine two statutory penalty provisions to craft a monetary recovery. By blending the penalty provisions of two statutes (the CFA and UDTPA) the Arbitrator created a treble penalty not cognizable under North Carolina law and wholly untethered from the relief contemplated by either statute.

The district court recognized that the Arbitrator's Interim Award was "explicitly incorporated into the Final Award" and that "[a]s detailed in the Interim

13

Award, the Arbitrator relied on the CFA's penalty provision…." JA0945 (citations omitted). The district court, however, considered the Arbitrator's decision to treble the CFA penalty a question of "the Arbitrator's interpretation of the CFA and its interplay with the UDTPA" and therefore, due to the standard of review, not subject to being vacated. JA0953. However, the district court's conclusion was incorrect as the Fourth Circuit has made clear that an arbitration award must be vacated where a party demonstrates that: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Jones v. Dancel,*792 F.3d 395, 403 (4th Cir. 2015) (quoting *Wachovia Sec.,* 671 F.3d at 478 n.5). Arbitrators have a duty to comply with the requirements and constraints of the underlying statutes at issue, and "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985).

Although the "manifest disregard standard is not an 'invitation to review the merits of the underlying arbitration' or to establish that an arbitrator 'misconstrued' or 'misinterpreted' the applicable law," (*Jones v. Dancel,*792 F.3d 395, 402 (4th Cir. 2015), quoting *Wachovia,* 671 F.3d at 478 n.5 & 481), it is to be used when a well-defined legal requirement is not interpreted but simply disregarded. Here, there is no

dispute that the CFA penalty was the corpus of the Arbitrator's Award. Further, there

is no dispute that the trebling component of the UDTPA is also a penalty. Finally,

North Carolina requires an election of remedies to prevent a double recovery, such

as the recovery of two penalties for the same act. *See e.g.*, JA0677-681. Nevertheless,

the Arbitrator ignored this legal requirement completely.

### A.     North Carolina expressly rejects the double recovery authorized by the Final Award.

North Carolina prohibits any form of duplicative recovery. It has long been

recognized that the doctrine of election of remedies is specifically designed to

prevent such a "double redress for a single wrong." *Smith v. Oil Corp*., 239 N.C.

360, 368, 79 S.E.2d 880, 885 (1954). Only when the conduct required for two awards

is different and the recovery serves different interests will a plaintiff's recovery of

two penalties not result in "double redress for a single wrong." *United Laboratories,

Inc. v. Kuykendall,* 335 N.C. 183, 194, 437 S.E.2d 374, 381 (1993) (quoting *Smith

v. Oil Corp*., 239 N.C. at 368, 79 S.E.2d at 885). Thus, two penalties (*e.g.,* treble

damages and punitive damages) cannot be imposed for the same action.

The most common situation involving an improper double recovery of

penalties occurs with punitive damages and treble damage awards. "It is well settled

in North Carolina both that statutory treble damages are a form of punitive damages

and that a party recovering treble damages may not also recover additional punitive

damages." *Brooks v. Chrysler Fin. Co. LLC*, No. 5:05CV36-H, 2005 WL 2122651,

at *2 (W.D.N.C. Aug. 31, 2005); *Accord Compton v. Kirby*, 157 N.C.App. 1, 21, 577 S.E.2d 905, 918 (2003) ("plaintiffs may receive punitive damages or be awarded treble damages, but may not have both"), citing *Mapp v. Toyota World, Inc*., 81 N.C.App. 421, 426, 344 S.E.2d 297, 301, disc. review denied, 318 N.C. 283, 347 S.E.2d 464 (1986). The reason for this rule is straightforward, both awards (treble and punitive damages) are meant to punish or penalize, not compensate. *Mapp,* 81 N.C.App. at 426-427.

To avoid a double recovery, North Carolina requires the prevailing party to elect his or her remedy because they cannot have both. *Id.* Only if the recoveries "serve different interests and are not based on the same conduct" is the plaintiff not required to elect between two awards to prevent duplicitous recovery. *Smith*, 239 N.C. at 368, 79 S.E.2d at 885. Here, as the district court recognized, "the Arbitrator relied on the CFA's penalty provision" to determine the award to be trebled under the penalty provisions of the UDTPA, and thus clearly awarded a duplicative penalty for the same conduct.

### B.    The penalties in the CFA and UDTPA serve the same purpose and cannot be recovered together.

North Carolina law clearly distinguishes damages from penalties. "Damages" are a compensatory award designed to make a party whole, which in a transactional context typically requires an offset. *See Richardson v. Bank of Am., N.A*., 182 N.C. App. 531, 562, 643 S.E.2d 410, 430 (2007) ("[W]hatever was retained by the

16

complaining party had value which, when retained by the complaining party, did reduce the amount of damages owed to the complaining party."); *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585, disc. rev. denied, 311 N.C. 751 321 S.E.2d 126 (1984) (quoting *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950)) ("The measure of damages used should further the purpose of awarding damages, which is 'to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.'") (citation omitted). The UDTPA follows this compensatory model, expressly rewarding actual damages for the injury done to the complaining party.

Conversely, a "penalty" is designed to discourage further conduct, not to compensate. *See e.g.*, *Shavitz v. City of High Point*, 177 N.C. App. 465, 474 (2006) (defining a penalty as a law that imposes a monetary payment for its violation where the payment is punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party). Unlike the UDTPA, which awards compensatory damages with an offset of amounts received, the remedy available for violating the CFA, which is set forth in N.C. Gen. Stat. § 53-166(d), expressly provides for a penalty.

First, the General Assembly expressly identified the statutory purpose of subsection (d) of the CFA in its title, "Additional *Penalties*" §53-166 (d)(emphasis

added). This is not a question of interpretation but is instead something conveyed through the expressed statutory language. Second, it is clear from the body of subsection (d) that the General Assembly clearly intended any recovery to be punitive and not compensatory – stating:

> Any contract of loan, the making or collecting of which violates any provision of this Article, or regulation thereunder, except as a result of accidental or bona fide error of computation is void, and the licensee or any other party in violation shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan.

N.C. Gen. Stat. § 53-166(d). Thus, the penalty invoked by the General Assembly was to declare the contract void and require the lending institution to give back anything it received. §53-166(d). As the district court noted, the Arbitrator clearly understood and relied upon this penalty.

Once the CFA *penalty* provision is recognized as the basis for the trebling, it is clear that the Arbitrator's use of the UDTPA penalty trebling provision created a double recovery in the exact same way a joint award of punitive and treble damages would. North Carolina courts have long recognized that the trebling of compensatory damages under the UDTPA was a penalty intended to deter future conduct. *See, Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*., 991 F.2d 141, 148 (4th Cir. 1993)(Trebling under the UDTPA is "not to compensate the wronged party, but to deter unwanted trade practices."; *Marshall v. Miller*, 302 N.C. 539, 546, 276 S.E.2d 397, 402 (1981) (The UDTPA included a trebling of actual damages as a penal

18

provision to "deter future misconduct."). Because of the penal nature of trebling, the UDTPA only "authorizes the trebling of actual damages." *Nintendo of Am., Inc. v. Aeropower Co*., 34 F.3d 246, 251 (4th Cir. 1994); *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 53 362 S.E.2d 578 (1987) (emphasis added) ("We therefore hold that plaintiff is entitled to have its actual damages trebled.").

It is equally clear, however, that the General Assembly intended the treble penalty within the UDTPA to be applied to the UDTPA's compensatory damages, not another penalty. The applicable section of the UDTPA – titled "Civil action by person injured; treble *damages*" (emphasis added) – makes this clear, stating:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action *on account of such injury done*, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C. Gen. Stat. § 75-16 (emphasis added). In this way, the UDTPA provides for both compensatory recovery and a trebling penalty to act as a deterrent. Moreover, the UDTPA, properly applied, did not create a potential for double recovery because the penalty being applied was in addition to a compensatory award.

### C.     The arbitrator disregarded the law and multiplied the UDTPA's treble penalty to the CFA penalty to improperly create a double recovery.

The Arbitrator ignored the expressed language of these statutory provisions and North Carolina's prohibition on double recovery to simply create his own recovery or his own brand of justice. When it is clear that the law prohibits two penalty awards for the same conduct (*Brooks v. Chrysler, supra*), and it is also clear that the Arbitrator understood he was combining two penalty provisions into one award and did it anyway, the "manifest disregard" standard set forth in *Wachovia* has been met. *Id.,* 671 F.3d at 481.

After finding violations of the CFA and UDTPA, the Arbitrator was required to determine the award under the CFA penalty, as well as the compensatory award to be trebled under the UDTPA and require each Plaintiff to select their remedy. The Arbitrator's Final Award, however, improperly created duplicative recovery by simply trebling the CFA *penalty*. This is the exact type of double recovery North Carolina prohibits. Just like punitive damages cannot be combined with treble damages to penalize the same conduct, the CFA penalty cannot be trebled under the UDTPA. The Arbitrator's Final Award clearly permitted double recovery in manifest disregard of North Carolina law.

First, the arbitrator did not calculate compensatory damages under the UDTPA. Compensatory damages require that an offset be applied to the amount of

20

damages owed for any value plaintiff retained. *See Richardson*, 182 N.C. App. at 562.[3]  The Arbitrator never offset the loan amounts Plaintiffs' received from the payments they made. Second, by failing to offset the loan proceeds received by each Plaintiff, the Arbitrator effectively used the CFA penalty to simply void the contract and disgorge the amounts Plaintiffs paid as a damage amount.  *See* N.C. Gen. Stat. § 53-166(d). Third, the arbitrator multiplied the CFA disgorgement penalty times the UDTPA treble penalty with, when applicable, the value of repossessed vehicles to calculate a final award. By multiplying the CFA penalty with the UDTPA penalty, the Arbitrator authorized the recovery of two statutory penalties for the same conduct.[4]

---

[3] "Damages to which an injured party is entitled should ordinarily reflect the harm actually sustained by the party." *Taylor v. Volvo N. Am. Corp.*, 339 N.C. 238, 257, 451 S.E.2d 618, 628 (1994) (concluding that under Chapter 75 "only the net loss to the consumer" should be trebled).  Here, in addition to failing to back out the principal funds received by each Plaintiff, the Arbitrator awarded more than is properly permissible under the UDTPA.  The UDTPA looks at the injury that flows from the violation – which here would be how much did TitleMax charge over and above what they were authorized to charge.  Thus, at a minimum, permissible charges and interest would also have to be backed out of the compensatory damages award.

[4] *State ex rel Cooper v. NCCS Loans, Inc.,* 174 N.C. App. 630, 641, 624 S.E. 2d 371, 378 (2005), cited by the Arbitrator and the district court, never discussed the treble penalty of the UDTPA. Although this case clearly recognized that a violation of the CFA "constitutes unfair or deceptive trade practices" in violation of the UDTPA, the trial court's award, which the appellate court affirmed, was only the CFA penalty, "ordering the contracts voided and money refunded to their customers." *Id.* 174 N.C. App. at 641, 624 S.E.2d at 379.

A simple illustration shows why the double recovery occurred. If a borrower obtained a $1,000 loan from TitleMax and made $2,000 in total payments, "damages" under the UDTPA could be $1,000 (amount paid less amount received), but the treble penalty would make the final award $3,000. Conversely, the CFA penalty (voiding the loan and refunding customer payments) would be $2,000. The plaintiff could then choose a recovery, the CFA penalty ($2,000) or the UDTPA treble damages ($3,000), but the Plaintiff does not get to receive a trebled CFA penalty ($6,000). The latter is what the Arbitrator awarded. The table below illustrates the result of this error for each Plaintiff:

| CORRECT AWARDS (In Black Text) | | | | | | |
|---|---|---|---|---|---|---|
| Plaintiff | Total Payments Made ("X") | Value of Vehicle Repossessed (If Applicable) ("Y") | Total Loan Proceeds Received by Plaintiff ("Z") | Actual Damages (X + Y - Z) | Treble Damages Amount (X + Y - Z) x 3 | **Inflated, Improper Amounts Awarded** |
| Bratton | $5,760.55 | $5,700.00 | $2,300.00 | $9,160.55 | **$27,481.65** | **$34,381.65** |
| Currie | $3,740.01 | N/A | $1,575.00 | $2,165.01 | **$6,495.03** | **$11,220.03** |
| Darrisaw | $4,154.48 | $6,500.00 | $2,800.00 | $7,854.48 | **$23,563.44** | **$31,963.44** |
| Davis | $3,824.31 | N/A | $2,000.00 | $1,824.31 | **$5,472.93** | **$11,472.93** |
| Euell | $7,860.37 | N/A | $4,101 | $3,759.37 | **$11,278.11** | **$28,581.11** |
| Grimsley | $16,618.30 | N/A | $3,600.00 | $13,018.30 | **$39,054.90** | **$49,854.49** |
| Harris | $6,081.15 | N/A | $1,478.23 | $4,602.92 | **$13,808.76** | **$18,930.12** |
| Hedrick | $202.00 | $3,250.00 | $550.00 | $2902.00 | **$8,706.00** | **$11,568.00** |
| Jackson | $5,437.57 | N/A | $4,800.00 | $637.57 | **$1,912.71** | **$16,312.71** |
| Johnson | $6,870.80 | $9,700.00 | $3,022.00 | $13,548.80 | **$40,646.40** | **$49,712.40** |
| Jones | $6,309.00 | N/A | $1,753.00 | $4,556.00 | **$13,668.00** | **$19,049.58** |
| Keys | $5,709.21 | N/A | $3,000.00 | $2,709.21 | **$8,127.63** | **$17,191.65** |
| Singleton | $3,314.90 | $5,000.00 | $2,000.00 | $6,314.90 | **$18,944.70** | **$24,944.70** |
| Warren | $0.00 | $15,000.00 | $2,200.00 | $12,800.00 | **$38,400.00** | **$45,000.00** |

The Treble Damages Amount column in bold (X+Y-Z * 3) comports with clear North Carolina law regarding the calculation of treble *damages* under the UDTPA. This calculation allows for compensatory damages and a treble penalty to discourage future conduct. The Arbitrator's Final Award (*i.e.,* the trebled penalties shown in red above) was in manifest disregard of North Carolina's well-established legal principles that prevent double recovery of penalties and must be vacated.

## II.    The Arbitrator exceeded his powers under the terms of the arbitration agreements by refusing to provide a written explanation for the flawed damages awards.

The Arbitrator provided zero written explanation for the damages amounts awarded.  TitleMax contracted for, but did not receive, a written explanation to accompany the award rendered in these matters.  Specifically, the Loan Agreements expressly require that "[a]t the timely request of any party, the arbitrator shall provide a written explanation for the award." *See e.g.,* JA0321.  Here, there is no dispute that TitleMax contracted for a written explanation supporting the award.  Because the Arbitrator's authority was clearly constrained by his contractual duty to "provide a written explanation for the award," this fundamental failing resulted in the Arbitrator "exceeding [his] powers" and engaging in a "misbehavior" that prejudiced the rights of TitleMax as a party to the Loan Agreements.  9 U.S.C. §

10(a)(3) and (4). Thus, TitleMax was forced to arbitrate under terms for which it did not bargain, and the Final Award should be vacated.

Parties are "'generally free to structure their arbitration agreements as they see fit'" and "agree on rules under which any arbitration will proceed[.]" *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (citation omitted). And, when they do so, "courts enforce those agreements vigorously to protect the parties' justified expectations concerning their choice of dispute resolution mechanism[.]" *Raymond James Fin. Servs. v. Cary*, 709 F.3d 382, 388 (4th Cir. 2013) (citing *Stolt-Nielson*, 559 U.S. at 682-83). An arbitrator does not have the authority to make decisions about which contractual provisions to apply and which contractual provisions to ignore. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). An arbitrator is required to enforce the privately negotiated agreements in accordance with their terms, and "when an arbitrator refuses to apply some contractual terms but not others, parties are forced to arbitrate pursuant to an agreement for which they did not fully bargain." *Sonic Automotive, Inc. v. Price*, No. 3:10-CV-382, 2011 U.S. Dist. LEXIS 90359, at *43 (W.D.N.C. Aug. 12, 2011).

In this case, the Arbitrator's Final Award contains no explanation for how a statutory penalty could be deemed damages for purposes of applying a treble

multiplier.  TitleMax clearly advised the Arbitrator of the settled legal principles that (1) a penalty is not a measure of actual damages, and (2) North Carolina requires an election of remedies to prevent a double recovery. *See e.g.*, JA0676-681. Nevertheless, even though these damages issues were raised through extensive briefing (and the Arbitrator's decision was based solely on the parties' written submissions), the Arbitrator does not even acknowledge TitleMax's arguments and ignores the issue completely in the Final Award.   While the Final Award included a damages chart – the chart on its face is inaccurate. Specifically, the damages chart includes a column entitled "Interest Paid." JA0276.  However, there is no question that the amounts included in the "Interest Paid" column include more than just interest; instead, the column includes interest paid *plus* the principal amount Plaintiffs received as part of the loan.  If the Arbitrator had offered a written explanation for the damages chart or addressed the legal issues TitleMax raised regarding North Carolina's prohibition on double recovery and requirement for the election of remedies, the parties may have been able to evaluate whether the chart's inaccuracy was intentional or inadvertent. But without any explanation from the Arbitrator to support his damages determination, all that can be said with certainty is that settled principles of North Carolina law were manifestly disregarded (see *supra* Section I).

Ignoring the requirement to provide a written explanation effectively writes that material term of the contract out of existence. By writing that provision out of the contract and then providing zero written explanation, the Arbitrator did not execute the arbitration under the terms agreed to by the parties and exceeded his powers in violation of 9 U.S.C. §10(a)(4).

Vacatur is the appropriate remedy when a party – like TitleMax – was prevented from receiving the arbitration for which it contracted. *Western Employers Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 262 (9th Cir. 1992) (granting vacatur where "the [arbitration] panel clearly failed to arbitrate the dispute according to the terms of the arbitration agreement" and "fail[ed] to provide Western with findings of fact and conclusions of law for which it contracted."). Here, the Arbitrator deviated from clearly established law by ignoring the rule against double recovery and conflating two statutory remedies and then failed to justify such deviation with a written explanation. Had the Arbitrator attempted to reduce such a manifest disregard of clear law into a written explanation, it would have made clear the Arbitrator was "dispensing his own brand of industrial justice." *See Stolt-Nielson S.A., supra,* 559 U.S. at 671. Because the Final Award fails to provide TitleMax with the written explanation for which it contracted, the Arbitrator exceeded his powers and failed to arbitrate the dispute in accordance with the terms of the Loan Agreements and the appropriate remedy is vacatur. 9 U.S.C. §10(a)(4).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the judgments of the district court should be reversed and vacated or, at a minimum, remanded to the Arbitrator to correctly calculate a recovery.

Dated: February 6, 2023          Respectfully submitted,

                              /s/ *Anthony J. Durone*
                              Anthony J. Durone
                              Lauren Tallent
                              BERKOWITZ OLIVER
                              2600 Grand Blvd Suite 1200
                              Kansas City, MO 64108
                              (816) 561-7007

                              *Counsel for Appellants*
                              *TitleMax of Virginia, Inc., and TitleMax of*
                              *South Carolina, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Anthony J. Durone, hereby certify that:

1.       This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,193 words.

2.       This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.       A true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF system.

Dated: February 6, 2023              /s/ *Anthony J. Durone*
                                     Anthony J. Durone
                                     Lauren Tallent
                                     BERKOWITZ OLIVER
                                     2600 Grand Blvd Suite 1200
                                     Kansas City, MO 64108
                                     (816) 561-7007

                                     *Counsel for Appellants*
                                     *TitleMax of Virginia, Inc., and TitleMax of*
                                     *South Carolina, Inc.*

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2023, I electronically filed the foregoing Brief of Appellants with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 6, 2023

/s/ *Anthony J. Durone*
Anthony J. Durone
Lauren Tallent
BERKOWITZ OLIVER
2600 Grand Blvd Suite 1200
Kansas City, MO 64108
(816) 561-7007

*Counsel for Appellants TitleMax of Virginia, Inc., and TitleMax of South Carolina, Inc.*